Brassard, J.
This case was before the court on June 10, 1998, for a hearing on the above-captioned motions. Herbert G. Roskind, Jr. and Holtrachem, Inc. brought this action in the Middlesex Superior Court of Massachusetts alleging fraud in the inducement, breach of fiduciary duty, interference with economic relations, conspiracy, violation of G.L'.c. 93A, breach of contract, indemnity, and failure to pay a promissoiy note. The defendants, Mark S. Hanna (“Hanna”), CalChlor Corp. (“Cal-Chlor") and Eugene Rodgers, Jr. (“Rodgers”) have moved for dismissal pursuant to Mass.R.Civ.P. 12(b)(3) and 12(b)(6). Defendants maintain that the forum selection clause of a stock purchase agreement signed by the parties mandates that all claims be heard in Lafayette, Louisiana. For the reasons which follow, Hanna and Cal-Chlor’s motion to dismiss is ALLOWED and Rodgers’ motion to dismiss is DENIED.
BACKGROUND
The facts as found in the stock agreement and the complaint are as follows:[1]
In 1986, plaintiff Herbert G. Roskind (“Roskind”), his then-partner Eiy Magasanik (“Magasanik”) and defendant Hanna established Cal-Chlor, a business owned and operated in Louisiana. Magasanik and Roskind each loaned $6,250.00 to Hanna, to enable Hanna to acquire slightly less than fifty percent of the stock in Cal-Chlor. On or about December 30, 1986, Hanna executed a promissoiy note in favor of Roskind in the principal amount of $6,250.00. After the purchase of Cal-Chlor, Hanna managed the business. The business grew into a substantial and profitable business with operations in several states.
Subsequently, Roskind purchased Magasanik’s interest in Cal-Chlor and thereby came to own a majority of the stock in the company. Notwithstanding his majority stock ownership, Roskind permitted Hanna to manage Cal-Chlor.
From 1986 through 1997, HoltraChem Inc. (“Holtrachem”), owned by Roskind and located in Na-tick, Massachusetts, provided administrative and management services and to Cal-Chlor. The services consisted of management, financial and accounting services, and administration of health insurance benefits for Cal-Chlor’s employees. All of the services were provided from HoltraChem’s headquarters in Massachusetts, and HoltraChem received a monthly fee for its services.
Beginning in or about 1995, HoltraChem and CalChlor did other business together. Cal-Chlor fulfilled orders taken by HoltraChem sales personnel. Holtrachem paid Cal-Chlor for the handling of calcium chloride by Cal-Chlor for HoltraChem’s customers, and also paid the cost of hiring and paying additional Cal-Chlor employees to administer the fulfillment of orders on behalf of HoltraChem. Amounts owed by each corporation for services rendered by the other company were settled through “intercompany accounts.”
In January of 1997, Hanna visited Massachusetts and presented Roskind with a proposal to purchase Roskind’s stock interest in Cal-Chlor. Hanna expressed his desire to own and operate Cal-Chlor independently.
During the first half of 1997, Roskind and Hanna, through their respective counsel and chief officers, negotiated an agreement (the “Stock Purchase Agreement”) whereby Hanna would purchase Roskind’s stock interest in Cal-Chlor, and the two companies, *722 HoltraChem and Cal-Chlor, would sever their business relationship. Roskind and HoltraChem, throughout the negotiations and stock purchase, relied on the financial and accounting services of Eugene Rodgers, Jr. (“Rodgers”). Rodgers was an employee of HoltraChem, but also served as the vice-president of finance of Cal-Chlor. In this capacity, Rodgers provided management, financial and accounting services to CalChlor. Under the employ of HoltraChem, Rodgers retained the authority to sign checks drawn by CalChlor and authorize wire transfers by Cal-Chlor.
The plaintiffs allege that prior to and during the negotiations with Roskind and HoltraChem, Hanna and Rodgers diverted assets of Cal-Chlor to their personal use. Plaintiffs further contend that Hanna and Rodgers caused Cal-Chlor to enter into a series of unnecessary transactions outside the regular course of its business. These alleged transactions caused the wasting of liquid assets of Cal-Chlor, thereby reducing the value of Roskind’s stock interest in the company.
Plaintiffs allege that Hanna and Rodgers fraudulently concealed their wrongdoings from Roskind and HoltraChem. During the first half of 1997, Rodgers repeatedly delayed in delivering the monthly Cal-Chlor financial reports to Roskind. Plaintiffs contend that this concealment was done in order to ensure that Roskind would not suspect any wrongdoing on the part of Rodgers and Hanna.
On or about June 30, 1997, Roskind, Hanna, CalChlor and HoltraChem entered into the Stock Purchase Agreement. Pursuant to the agreement, the closing of the stock purchase transaction was scheduled to occur on July 10, 1997. The Stock Purchase Agreement provided that the intercompany accounts between HoltraChem and Cal-Chlor were to be settled before the agreement closed. Cal-Chlor and HoltraChem disputed the actual amount owed under the intercompany accounts. Cal-Chlor refused to pay its intercompany debt to HoltraChem at the closing of the Stock Purchase Agreement on July 10, 1997. The debt remains unsettled. Moreover, the Stock Purchase Agreement provides, in a forum selection clause, that any dispute concerning the conduct of the parties in connection with the Agreement shall be heard in Louisiana.[2]
Subsequent to the closing of the Stock Purchase Agreement, Roskind discovered a series of suspicious financial transactions in Cal-Chlor’s financial records. Roskind and HoltraChem determined that Rodgers had charged personal and excessive expenses to HoltraChem, and had otherwise diverted assets of HoltraChem to his own use.
On September 8, 1997, Rodgers resigned his position as Chief Financial Officer of HoltraChem effective September 30, 1997. Rodgers removed his expense report files from HoltraChem before or when he left the company. HoltraChem contends that the taking of the expense reports has prevented it from determining the full extent of his wrongful diversion of assets of HoltraChem.
DISCUSSION
The Supreme Judicial Court accepts “the modem view that fomm selection clauses are to be enforced if it is fair and reasonable to do so.” Jacobson v. Mailboxes etc., USA, 419 Mass. 572, 574-75 (1995); citing The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, (1972) (“[t]he correct approach would have been to enforce the fomm clause specifically unless [the challenging party] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching”).
A. Hanna and Cal-Chlor’s Motion to Dismiss
Hanna and Cal-Chlor move to dismiss Roskind and HoltraChem’s claims against them arguing that Roskind and HoltraChem have expressly agreed in writing that these claims “shall be heard” in Lafayette, Louisiana. Roskind and HoltraChem oppose Hanna and Cal-Chlor’s motion arguing that their claims are directed to fraud and commercial bribery prior to the execution of the Stock Purchase Agreement.
The clause at issue provides that “any dispute concerning the conduct of any party in connection with this Agreement or otherwise shall be heard only in the courts ... [of Louisiana].” Here, plaintiffs do not argue that the fomm selection clause was induced by fraud or that it was unreasonably overreaching. Rather, they argue that the conduct which harmed them occurred before the execution of the Stock Purchase Agreement and, therefore, their claims lie outside the reach of the forum selection clause. Essentially, Roskind and HoltraChem attempt to distinguish their claims from claims that would be subject to the fomm selection clause by characterizing their claims as arising from wrongful “pre-contract” conduct. However, the thrust of the plaintiffs’ complaint is that the defendants’ are in breach of the Stock Purchase Agreement and that defendants’ misrepresentations induced plaintiffs to enter the Stock Purchase Agreement. Accordingly, this dispute “concernís] the conduct of. . . [a] party in connection with [the] agreement” and is therefore subject to the forum selection clause signed by the parties. See Jacobson v. Mailboxes etc. USA, at 579 (“[a] plaintiff should not be allowed to vitiate the effect of a fomm selection clause simply by alleging peripheral claims that fall outside its apparent scope”).
In this case, sophisticated business parties negotiated a broad fomm selection clause. The Court concludes that the fomm selection clause is enforceable. Accordingly, plaintiffs’ claims against Hanna and CalChlor must be dismissed.
B. Rodgers’ Motion to Dismiss
The plaintiffs have brought the following two claims against defendant Rodgers; count IV alleges that Rodgers conspired with Hanna and Cal-Chlor to waste *723 assets of Cal-Chlor and to oust Roskind from CalChlor and count VI alleges breach of fiduciary duty against Rodgers relating to diversion of assets and embezzlement. Rodgers moves to dismiss these claims pursuant to Mass.R.Civ.P. 12(b)(3) and 12(b)(6) arguing that the forum selection clause contained in the Stock Purchase Agreement entered into by the plaintiffs, Roskind and HoltraChem, and the other defendants, Hanna and Cal-Chlor, requires the claims against Rodgers to be litigated in Louisiana. Rodgers asserts that the claims against him fall within the scope of the forum selection clause because he was involved in the negotiations leading up to the execution of the Stock Purchase Agreement which contains the forum selection clause.
Roskind and HoltraChem oppose Rodgers’ motion to dismiss arguing that the claims against Rodgers do not fall within the scope of the forum selection clause because Rodgers was not a direct party to or third-party beneficiary of that contract.
Section 9.04 of the Stock Purchase Agreement provides in pertinent part, "[e]ach of the parties hereto consents and agrees to the jurisdiction of any State or Federal court sitting in the Parish of Lafayette, State of Louisiana,... and agrees that any dispute concerning the conduct of any party in connection with this Agreement or otherwise shall be heard in the courts described above.” Rodgers’ Motion to Dismiss, Exhibit A. The forum selection clause of the Stock Purchase Agreement is enforceable against the individuals who executed the contract. The Stock Purchase Agreement at issue was signed only by Hanna and Roskind. Rodgers was mentioned in the Stock Purchase Agreement, but he did not sign that Agreement. Since Rodgers is not a party to the Stock Purchase Agreement, the forum selection clause is not enforceable as to the claims against him.
There is no evidence to suggest that the claims against Rodgers fall within the scope of the forum selection clause pursuant to a theory that Rodgers was a third-party beneficiary of the Stock Purchase Agreement. “[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.” Ayala v. Boston Housing Authority, 404 Mass. 698, 699 n. 13 (1989), citing Restatement (Second) of Contracts §.302 (1981); Flattery v. Gregory, 397 Mass. 143, 148-49 (1986), citing Restatement (Second) of Contracts §302 (1981). The record before the Court does not reflect an intention of the parties to the Stock Purchase Agreement that Rodgers be treated as a beneficiary of that Agreement.
In the present case, the forum selection clause is not enforceable as to the claims against Rodgers because Roskind and HoltraChem’s claims against Rodgers do not arise out of “the conduct of [a] party in connection with” the Stock Purchase Agreement. Further, the court concludes that the forum selection clause is not enforceable as to the plaintiffs’ claims against Rodgers because he was not party to or a third-party beneficiary of the Agreement.
ORDER
For the reasons stated above, it is hereby ORDERED that Hanna and Cal-Chlor’s motion to dismiss is ALLOWED and Rodgers’ motion to dismiss is DENIED.

 See Simplex Time Recorder Company, Inc. v. Federal Insurance Company, 37 Mass.App.Ct. 947, 948 (1994) (the judge properly considered an affidavit and a copy of a payment bond in ruling on the motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(3)).

 Article 9.04 of the Stock Purchase Agreement states in pertinent part: “Each of the parties hereto consents and agrees to the jurisdiction of any State or Federal court sitting in the Parish of Lafayette, State of Louisiana,. . . and agrees that any dispute concerning the conduct of any party in connection with this Agreement or otherwise shall be heard only in the courts described above.”